CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED

SEP 2 6 2008

JOHN F. CORCORAN, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| PAMELA J. TALLEY,<br>                              *Plaintiff,* | CIVIL NO. 3:07CV00046 |
| v. | MEMORANDUM OPINION |
| MICHAEL J. ASTRUE, COMMISSIONER OF<br>SOCIAL SECURITY,<br>                              *Defendant* | JUDGE NORMAN K. MOON |

This matter is before the Court upon the parties' cross motions for summary judgment[1] (docket no. 12, 13), the Report and Recommendation of the U.S. Magistrate Judge (docket no. 15), the Commissioner's objections thereto (docket no. 16), and Plaintiff's response to the Commissioner's objections (docket no. 17). I referred this matter to the Honorable B. Waugh Crigler, U.S. Magistrate Judge, for proposed findings of fact and a recommended disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) & (C). The Magistrate filed his Report and Recommendation ("Report") on March 26, 2008, recommending that this Court enter an order granting Plaintiff's motion for summary judgment and remanding the case to the Commissioner for further proceedings pursuant to 42 U.S.C. § 405(g). The Commissioner timely filed objections to the Report on April 1, 2008, obligating the Court to undertake a *de novo* review of those portions of the Report to which objections were made. 28 U.S.C. § 636(b) (2006); *Orpiano v. Johnson*, 687 F.2d 44, 48 (4th Cir. 1982). After a thorough examination of the documented record, the applicable law, the Commissioner's objections, and Plaintiff's response, I hereby

---

[1] The document Talley filed with the Court is entitled "Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment and Memorandum in Support of Her Motion for Decision Reversal and/or Remand." At the time the document was filed, the Commissioner had not yet filed his motion for summary judgment. The

decline to follow the Report of the Magistrate Judge and will grant the Commissioner's motion for summary judgment.

## I. BACKGROUND

Plaintiff, Pamela Talley, protectively filed an application for disability insurance benefits and supplemental security income on January 31, 2004, alleging a disability onset date of August 1, 2003. (R. 17.) The claims were denied initially and upon reconsideration. *Id.* Thereafter, Talley timely requested a hearing before an administrative law judge ("ALJ"), which was held on February 14, 2006. *Id.*

In a decision ultimately adopted as the final decision of the Commissioner, the ALJ concluded that while Talley suffered from several severe impairments (obesity, fibromyalgia, and depression), those impairments did not meet or equal the criteria for a listed impairment when viewed individually or in combination with one another. (R. 18.) The ALJ determined that Talley was not completely debilitated by either her physiological or emotional symptoms and was thus capable of performing routine, sedentary work in a non-stressful environment. (R. 23.) With respect to Talley's physiological condition, the ALJ relied on the fact that Talley was still capable of performing everyday activities and household chores[2] and discounted a December 2, 2005 physical residual functional capacity ("RFC") assessment by Dr. Bakshi as inconsistent with the weight of the medical records and some of Talley's own testimony.[3] (R. 22-23.) With respect to Talley's emotional condition, the ALJ primarily relied upon the assessments of Dr. Cronin and Dr. Kalil as accurate portrayals of Talley's functional abilities. The mental RFC

---

Court will construe Talley's pleading as a motion for summary judgment.
  [2] Talley previously acknowledged doing laundry, cooking, driving, shopping, and playing with her granddaughter. While she testified that she no longer performed household chores, the ALJ "[did] not perceive any adverse change in [Talley's] physical or mental health that would explain this change" to support his conclusion concerning her physical capabilities. (R. 22.)
  [3] Bakshi's assessment opined that could only sit, stand, or walk for less than two hours per workday and that she was incapable of performing even "low stress" jobs. (R. 295-298).

2

assessment, originally completed by Cronin and later affirmed by Kalil, surmised that Talley "continues to have the capacity to perform routine, simple work" with only moderate limitations on certain abilities related to the workplace environment.[4] (R. 253-255.) Acknowledging that Talley's treating psychiatrist essentially concluded that she was "psychiatrically incapacitated" as of August 2005, the ALJ reasoned that Kalil's assessment provided a more accurate depiction of Talley's emotional state because Talley had improved "rapidly and significantly" in the following months when she took her medication and complied with regular treatment. (R. 23.) Based on all of these factors, the ALJ found that Talley was not disabled under the terms of the Social Security Act and thus not entitled to disability insurance benefits or supplemental security income. (R. 25.)

Talley timely appealed the ALJ's decision to the Appeals Council, which denied review and adopted the ALJ's decision as the final decision of the Commissioner. (R. 6-8.) Talley timely filed the instant action on August 31, 2007. The parties filed cross-motions for summary judgment, and the Magistrate recommended that this Court enter an order granting Talley's motion for summary judgment and remanding the case to the Commissioner for further proceedings pursuant to 42 U.S.C. § 405(g).

The Magistrate found that "the narrow path chosen by the Law Judge to support his finding relating to plaintiff's psychological limitations, principally by relying on the adoptive report of Dr. Kalil, ignores the great bulk of other relevant, material and competent medical evidence of record and provides good cause to remand for further proceedings." Specifically, the Magistrate concluded that the ALJ did not give enough weight or consideration to the findings of

---

[4] While the assessment concluded that Talley was not significantly limited with respect to the majority of workplace tasks and activities, it concluded that she was moderately limited in her ability to: follow instructions, conform to a schedule, work in coordination with others without distraction, respond to criticism from supervisors, and complete a normal workday and workweek without interruptions from psychologically-based symptoms. (R. 253-254.)

3

Lucille Barlow, a licensed clinical social worker ("LCSW"), Dr. Jenkins, and Dr. Bakshi. According to the Magistrate Judge, Bakshi's and Jenkins's opinions were entitled to greater weight, and the ALJ should have considered Barlow's findings in reaching his final decision.

In his objection to the Magistrate's Report, the Commissioner argues that the Magistrate erroneously applied the "substantial evidence" standard of review and that it is the ALJ's, not the Magistrate's, responsibility to weigh conflicting evidence in the record. The Commissioner argues that the Court should affirm its decision because substantial evidence supports the ALJ's determination that Talley's mental impairments were not disabling. Furthermore, the Commissioner contends, the Magistrate's reliance on the findings of Barlow, Jenkins, and Bakshi was misplaced.

## II. STANDARD OF REVIEW

This Court must uphold the Commissioner's factual findings if they are supported by substantial evidence and were reached through application of the correct legal standard. *See* 42 U.S.C. § 405(g) (2000); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)), and consists of "more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F. 2d 640, 642 (4th Cir. 1966).

In determining whether the Commissioner's decision was supported by substantial evidence, the Court may not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Craig*, 76 F.3d at 589. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ]." *Id.* (internal quotation marks omitted).

4

Case 3:07-cv-00046-NKM-BWC   Document 18   Filed 09/26/08   Page 4 of 10   Pageid#: 80

Accordingly, a court may not undertake a *de novo* review of the Commissioner's decision, and the fact that the record may support a conclusion inconsistent with that of the Commissioner is immaterial. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## III. DISCUSSION

### A. Mental and Emotional Impairments

Substantial evidence supports the ALJ's decision that Talley's mental and emotional impairments did not render her disabled and incapable of performing past relevant work. To support his decision, the ALJ primarily relied on two psychiatric assessments, both of which were first completed by Dr. Cronin on October 1, 2004 and reviewed and affirmed by Dr. Kalil on April 11, 2005. (R. 253-269.) As noted above, the assessments surmised that Talley "continues to have the capacity to perform routine, simple work" with only moderate limitations on certain workplace-related abilities. (R. 253-255, 266.)

While acknowledging the poor picture of Talley's psychological health that was portrayed in the August 8, 2005 treatment notes filled out by Dr. Mooney (Talley's treating psychiatrist at Region Ten), the ALJ reasoned that the assessments of Kalil and Cronin provided a more accurate depiction of Talley's emotional health because her condition had rapidly and significantly improved in the months leading up to December 2005. (R. 23.) For example, Mooney's August 22, 2005 treatment notes show that Talley conceded that her medication was helping and she was "otherwise feeling good" aside from some nervousness. (R. 310-311.) Mooney's December 5, 2005 treatment notes show that Talley said she was "doing OK" at the time, her thought process was logical and organized, her judgment was fair, and her thought content was appropriate to the situation, although her mood was mildly anxious. (R. 301.)

The Magistrate Judge claims that the ALJ essentially ignored the findings of Barlow,

5

Talley's social worker at Region Ten. While the ALJ may not have specifically referenced Barlow's findings, it appears that he did consider her treatment notes as part of his overall conclusion that Talley's condition improved markedly in the months leading up to December 2005. Barlow's notes are consistent with Dr. Mooney's observation that Talley's mental and emotional condition deteriorated between May 2005 and August 2005 but improved between August 2005 and December 2005. For example, on May 12, 2005, Barlow noted that Talley's "sporadic use of medications needs to be addressed" (R. 322.), and Barlow's June 13, 2005 treatment notes indicated that Talley was prescribed Zoloft and Zyprexa at the time, "but not taking the Zyprexa consistently." (R. 319.) But on November 22, 2005, Barlow noted that Talley's emotional health was much improved due to Talley's adherence to her prescriptions. (R. 303.) All of these observations are consistent with the ALJ's finding that Talley's emotional health, which deteriorated in the summer of 2005, was much improved by December 2005 and thus more consistent with Kalil's assessment in April 2005.

It is worth noting that while it appears that the ALJ considered Barlow's findings in reaching his decision anyway, he was not *required* to weigh her opinion regarding the severity of Talley's mental impairments, as the Magistrate Judge claims. The applicable regulations state that the Commissioner "*may*" (not "shall") also use evidence from sources other than listed medical sources to determine the severity of a claimant's impairment. *See* 20 C.F. R. §§ 404.1513(d), 416.913(d) (2008) (emphasis added). Assuming, for the sake of argument, that the ALJ did not weigh Barlow's findings, nothing in the regulations required the ALJ to explicitly weigh the opinion of an "other source" like Barlow.

Finally, the Magistrate Judge claims that the ALJ did not afford enough weight to the

6

August 24, 2004[5] report of Dr. Jenkins, a physician with the Virginia Department of Rehabilitative Services. The Magistrate Judge claims that Jenkins's report should be given as much weight as Dr. Kalil's assessments because Jenkins actually had the opportunity to examine Talley in person. While it is true that Jenkins examined Talley, Jenkins's report does nothing more than express his opinion that she should be referred to a mental health specialist for treatment for potential bipolar disorder. (R. 188.) It does not express any opinion concerning the effect of Talley's emotional impairments on her ability to work. Furthermore, in support of the ALJ's conclusion that Talley's physiological impairments do not render her disabled (see below), Jenkins's report concludes that Talley's physical symptoms would not preclude her participation in the workforce. (R. 188-189.)

As explained above, it is not the role of this Court to re-weigh the evidence or substitute its own judgment for that of the ALJ. The ALJ's conclusion with respect to Talley's mental and emotional health is supported by substantial evidence because there is a sound basis for relying on the assessments of Kalil and Cronin (as opposed to Mooney's August 2005 treatment notes) as accurate portrayals of Talley's mental and emotional health. The record shows that the ALJ weighed all relevant evidence and supports his conclusion that Talley's emotional condition improved significantly with medication and treatment between August and December 2005.

### B. Physiological Impairments

Substantial evidence also supports the ALJ's decision that Talley's physiological impairments did not render her disabled and incapable of performing past relevant work. The ALJ relied on a variety of factors to support his decision concerning Talley's physiological condition: she had not seen a chronic pain specialist since August 2003; she had never been

---

[5] The Magistrate's Report states that Dr. Jenkins's evaluation was performed on August 24, 2005. The record shows, however, that the evaluation was conducted on August 24, 2004. (R. 186.)

7

hospitalized or gone to the emergency room for her symptoms; Dr. Jenkins did not believe that she suffered from any objective physical symptoms preventing her from performing work; she had acknowledged being able to do laundry, do light cooking, socialize with a boyfriend, watch TV, read, drive regularly, make her bed, shop with help, play with and baby-sit her granddaughter, and load the dishwasher.[6] (R. 22-23.) While Dr. Bakshi's December 2, 2005 physical RFC assessment stated that Talley could only sit, stand, or walk for less than two hours per workday and was incapable of performing even "low stress" jobs, the ALJ determined that the assessment was not entitled to great weight because it was inconsistent with some of Talley's own testimony and the medical record as a whole. (R. 23.) Indeed, Bakshi's own treatment notes do not support the degree of physical limitations expressed in the physical RFC assessment. (R. 357-385.) Further, the physical RFC assessment performed by Dr. Luc Vinh on April 11, 2005 fails to note any significant physical limitations that would preclude Talley from performing light, sedentary work.[7] (R. 247-252.) While the ALJ found Vinh's assessment to be overly optimistic in light of the chronicity of Talley's symptoms, he weighed it together with Bakshi's assessment and Talley's testimony and medical records to conclude that she was capable of performing simple, sedentary work in a non-stressful environment. (R. 23.)

While a court is generally required to accord greater weight to the opinion of a treating physician, it need not be given controlling weight. *See Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992). If a treating physician's opinion "is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590. Bakshi's physical RFC assessment was not supported by his treatment

---

[6] Talley testified at the hearing that she no longer does household chores, but the ALJ did not perceive any adverse change in her physical or mental health that would explain such a change. (R. 22.)
[7] The assessment notes that Talley could stand or walk for a total of six hours in an eight hour workday, occasionally lift or carry up to twenty pounds, and frequently lift or carry up to ten pounds. (R. 248.)

8

notes and is at odds with Vinh's assessment, Talley's testimony, and other medical evidence in the record. Accordingly, the ALJ was justified in discounting Bakshi's assessment and reaching the final decision that Talley was not disabled.

As noted by the Commissioner's objection, the Magistrate Judge failed to apply the appropriate standard of review in his Report. This Court's only role is to determine whether the ALJ's decision was supported by substantial evidence—not to re-weigh the evidence or undertake a *de novo* review of the case. The Commissioner's decision should be affirmed in this case because substantial evidence supports his decision that Talley's physiological and emotional impairments do not preclude her from performing routine, sedentary work in a non-stressful environment.

## IV. CONCLUSION

After a thorough examination of the Commissioner's objections, Talley's response, the applicable law, the documented record, and the Magistrate's Report, the Court grants the Commissioner's objections. The Commissioner's decision that Talley is not disabled because she is capable of performing past relevant work is supported by substantial evidence. Accordingly, I decline to adopt the Report and Recommendation of the U.S. Magistrate Judge filed March 26, 2008. Instead, I hereby GRANT the Commissioner's motion for summary judgment (docket no. 13), AFFIRM the Commissioner's decision to deny benefits, and ORDER that the Clerk of this Court DISMISS this case and STRIKE it from the Court's docket.

The Clerk of the Court is hereby directed to send a certified copy of this Order to all counsel of record and to U.S. Magistrate Judge B. Waugh Crigler.

ENTER: This 26th day of September, 2008.

9

_____
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE